IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:21-cr-50041-1 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Dave Roberson, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the matter of Defendant Dave Roberson's competency to stand trial. For the reasons set forth below, the Court continues the competency hearing pending the completion of a second psychiatric or psychological examination and report.

**I. Background**

Defendant was indicted on July 13, 2021, for allegedly assaulting a corrections officer at USP Thomson on June 24, 2021, in violation of 18 U.S.C. § 111(a)(1), (b). Dkt. 2. At the time, Defendant was serving a 164-month sentence for an armed robbery. *See United States v. Roberson*, No. 1:08-CR-59, Dkt. 78 (S.D. Ga. Mar. 3, 2010). Defendant completed his sentence and on September 7, 2021, he was transferred from the custody of the Bureau of Prisons (BOP) to the custody of the U.S. Marshal for an initial appearance and arraignment on the indictment in this case. Dkts. 7–8. After a detention hearing, the Court ordered Defendant detained pending trial. Dkt. 13. Defendant was housed at the Winnebago County Jail.

In November 2021, after Defendant's appointed counsel was allowed to withdraw, attorney Michael J. Phillips was appointed to represent him pursuant to the Criminal Justice Act. Dkt. 18. Over the following months, the parties engaged in plea negotiations, and the Government tendered

1

a proposed plea agreement to Mr. Phillips. Dkts. 21, 23, 25. On April 28, 2022, Mr. Phillips noted in a joint status report that Defendant reported experiencing delusions of voices in his head, which prevented Defendant from reaching a decision on his response to the proposed plea agreement. Dkt. 29.

On May 13, 2022, Mr. Phillips filed an unopposed motion for a competency hearing. Dkt. 31. In support of the motion, Mr. Phillips attached an affidavit in which he averred that Defendant "could no[t] make the decision whether to accept or reject the proposed Plea Agreement because voices in his head were trying to tell him different actions to do." Phillips Aff. ¶ 4, Dkt. 31. As such, Mr. Phillips said that he was "unable to rationally discuss with Dave Roberson possible defense witnesses, Mr. Roberson's response to the received plea agreement or pretrial motions." *Id.* ¶ 6. Based on Mr. Phillips' representations, on May 17, 2022, the Court granted the motion for a competency hearing and ordered that a psychiatric or psychological examination of Defendant be conducted and that a report be filed pursuant to 18 U.S.C. §§ 4241, 4247. Dkt. 32.

Defendant was transferred from the Winnebago County Jail on June 3, 2022, to undergo a psychological examination by Cynthia A. Low, Ph.D., a forensic psychologist at FDC SeaTac in Seattle, Washington. Dkts. 33, 88. Defendant arrived at FDC SeaTac on June 15, 2022, Dkt. 33, and underwent a health intake screen. Low Rep. at 8, Dkt. 88. The screening clinician noted that Defendant was taking Zoloft and Zyprexa, that Defendant's mental status was normal, and that Defendant denied a history of auditory hallucinations or suicide attempts. *Id.*

Dr. Low described her first encounter with Defendant as follows:

> I conducted a 45-minute forensic intake with Mr. Roberson on June 28, 2022, in the Special Housing Unit (SHU).[1] He was pleasant, cooperative, and talkative, and spoke in a flamboyant and feminine

---

[1] Dr. Low did not explain what differentiates the SHU from general housing at FDC SeaTac, although she later testified that FDC SeaTac does not have a special mental health unit.

> manner. He was an unreliable historian as some of his reported history was contradictory with collateral records, and he also contradicted himself. After the purpose and process of the evaluation were briefly explained, and limits of confidentiality were discussed, he agreed to cooperate. He also requested the evaluation be recorded and was told that would not be done.
>
> . . . .
>
> . . . [Mr. Roberson] claimed to hear voices that confuse him. They talk about his life and encourage him to be himself, but sometimes they call him names like "bitch." Mr. Roberson added it could be his own voice because sometimes they sound like him, but other times they do not. The voices began when he was using drugs.
>
> The defendant first took psychotropic medication while in the Georgia Department of Corrections (DOC) in the early 2000's. They were for voices and depression but were too strong. He was currently prescribed Zyprexa, an antipsychotic, and Zoloft, an antidepressant. He stated the medications did not help, but he then reported the Zyprexa reduced his racing thoughts.

Low Rep. at 2, Dkt. 88. On July 25, 2022, Defendant met with a physician at FDC SeaTac. *Id.* at 9. Defendant told the physician that "[h]e took Prozac [an antidepressant] and Geodon [an antipsychotic] but discontinued years ago because he no longer needed them" and "reported hearing voices, mood swings, nightmares, poor sleep, and decreased energy." *Id.* The physician continued Defendant's medications. *Id.* Dr. Low noted that "Mr. Roberson had an appointment with the contract psychiatrist on July 25, 2022, but he[2] did not show." *Id* at 8.

Dr. Low reported that Defendant refused to participate in the psychological examination and described her three attempts to examine him as follows:

> I met with Mr. Roberson on July 29, 2022, to formally begin the assessment. He was sleepy and moved slowly. He rambled, continually interrupted me, and had to be repeatedly redirected as we reviewed the court order. His mood was irritable and he asked what would happen if he refused to participate. When asked about the abrupt change in his motivation, he simply responded he was "ready to go." The defendant reported discontinuing the Zyprexa for

---

[2] Presumably, Dr. Low was referring to Defendant and not the contract psychiatrist.

3

>the past 2 days. He reported, "I do have a woman in me," and wanted to lay down in his room and not bother anybody. He acknowledged feeling upset because when I told him he was interrupting me, he perceived I was being rude and inconsiderate. Mr. Roberson rambled about being unfairly housed in SHU upon his arrival due to his background. He asserted he has "moods," and said today he was in a "sleeping mood" and it was a male. He stated he would now allow himself to be more feminine. Mr. Roberson clarified he is not 2 different people and reported his sleeping mood was simply the fact he is tired. He continued to refuse the evaluation and stated it had nothing to do with this psychologist. He also reported feeling the staff were trying to kill him.
>
>I touched base with the defendant on August 5, 2022, on his housing unit. He simply shook his head "no" when I asked him if he wanted to participate in the evaluation.
>
>I spoke with him briefly on August 9, 2022. The defendant was polite in declining participation. He claimed he received a letter from his attorney stating the Judge saw no need for the current evaluation. He further claimed his family spoke with the Judge, who told them there was no need for the evaluation.

Low Rep. at 3–4, Dkt. 88. Dr. Low relayed Defendant's claims to Mr. Phillips, who responded that he did not tell this to Defendant and had no knowledge of any statements by Judge Jensen to Defendant's family. *Id.* at 5–6.[3]

Defendant was returned to the Winnebago County Jail in September 2022, Dkt. 42, and Dr. Low's report, which was dated October 31, 2022, was filed with the Court on November 7, 2022, Dkt. 46.

In her report, Dr. Low acknowledged that, in light of Defendant's refusal to participate, "the procedures utilized in the evaluation of Mr. Roberson could only include a forensic intake and observations of his behavior at this facility. Supplemental information was gathered through

---

[3] At no point did the Court rescind its order for the psychological examination, communicate *ex parte* with Mr. Phillips, or communicate with Defendant's family.

4

a review of legal documents, medical records, and mental health records." Low Rep. at 1, Dkt. 88.[4] When addressing mental status and behavioral observations, Dr. Low stated:

> A formal mental status examination could not be conducted due to his refusal to participate. Despite his reports of auditory hallucinations, he was never observed responding to internal stimuli and he also acknowledged the voices may be his own. No psychotic symptoms were observed or reported by staff.

*Id.* at 9. Based on the evidence she considered, Dr. Low concluded that Defendant suffers from Borderline Personality Disorder, Adult Antisocial Behavior, and Gender Dysphoria in Adolescents and Adults. *Id.* Dr. Low further opined:

> Mr. Roberson's reports of auditory hallucinations are extremely dubious. He told his attorney he has been hearing voices for 20 years but his BOP records indicate he has never reported hearing voices from 2009 to 2021. His current reports were atypical, vague, and contradictory, in that he stated some of the voices sounded like himself. There were no genuine signs of symptoms of hallucinations.

*Id.* at 10. Ultimately, Dr. Low opined that Defendant is competent to stand trial, stating:

> Despite his lack of cooperation, the available information indicates there is no evidence he suffers from a significant mental disease or defect. There was no evidence he was in any acute distress, or of any significant functional impairment due to a mental disorder. Based on all of this information, there [is] no evidence to indicate the defendant suffers from a mental disorder that would substantially impair his present ability to understand the nature and consequences of the court proceedings brought against him, or substantially impair his ability to assist counsel in his defense.

*Id.* at 11.

---

[4] The legal documents included: BOP records concerning Defendant's criminal and disciplinary history; the Indictment and Motion for Competency Hearing in this case; the Presentence Investigation Report from Defendant's case in the Southern District of Georgia; and email communications between Dr. Low and Mr. Phillips on July 25 and August 11, 2022. Low Rep. at 4, Dkt. 88. The medical and mental health records included: Defendant's BOP medical and psychological records from April 17, 2009, to July 25, 2022. *Id.* at 6. None of these underlying legal documents or medical records are before the Court except for the Indictment and Motion for Competency Hearing, which appear on the case docket. Dkts. 2, 31.

After receiving Dr. Low's report, the Court attempted to schedule a competency hearing, but Defendant refused to appear at two in-person status hearings as ordered. Dkts. 48, 51. At these status hearings, Mr. Phillips informed the Court that Defendant had been refusing to communicate with him. Defendant appeared at a status hearing on January 19, 2023, but refused to communicate verbally with Mr. Phillips or the Court. Dkt. 52.

Mr. Phillips was subsequently granted leave to file an amended motion for a competency hearing, which included the following letter to Mr. Phillips from Megan Johnson, LCPC, who is the mental health site supervisor at the Winnebago County Jail:

> Mr. Roberson left the Winnebago County Jail on 6/3/22 stable on psychiatric medications. He reported he was to be gone for 2 weeks for an evaluation. He returned 3 months later off medication and symptomatic. A med list was sent to the jail, but unsure how long patient had been non-compliant. Since returning in September, Mr. Roberson has stopped talking to all staff. He moved to the mental health unit after being back for 10 days due to this and not showering. While in the mental health pod, patient has continued to refuse all mental health treatment. Writer and officers have observed patient pacing in his cell talking to someone not present. He refuses most, if not all, time out of his cell. Writer is unsure when patient last showered. His cell appears dirty most days and officers end up having to clean it. Patient is eating and drinking daily. Per officer reports, some nights he is awake all night yelling. Other nights, he is quiet. Patient has not been aggressive this incarceration while symptomatic and he is still eating, therefore, emergency medications have not been warranted. Based on my experience working in this facility and with this patient, Mr. Roberson appears unable to participate in court proceedings without further mental health intervention that this facility is not equipped to provide.

Johnson Letter, Dkt. 53, at 9. On February 2, 2023, the Court granted Defendant's amended motion for a competency hearing. Dkt. 55.

Mr. Phillips was also granted leave to subpoena incident reports and other documents "detailing the actions and/or mental state of Dave Roberson while in the Winnebago County Jail"

6

from September 1, 2022, to March 20, 2023. Dkts. 72, 88-1.[5] For purposes of the competency hearing, the parties stipulated to several facts based on these records. Dkt. 79. The parties stipulated that while Defendant was incarcerated at the Winnebago County Jail between September 1, 2022, and March 20, 2023 (after his return from FDC SeaTac), Defendant refused to take his prescription medications on at least 25 occasions between September 1 and October 25, 2022, after which Defendant's prescription medications were no longer offered to him; that Defendant refused time out of his cell on at least 45 occasions; that Defendant refused to accept or wear a clean jumpsuit on three occasions; and that Defendant refused to meet with, talk to, or accept legal mail from Mr. Phillips on three occasions. *Id.* at 3–4. The parties further stipulated that correctional officers observed Defendant threaten to throw urine and feces out of his cell; refuse to sign a medications refusal form; shout inside his cell at "unknown person(s)"; yell "at no one"; and yell loudly through the night. *Id.*

The Court commenced an in-person competency hearing on April 7, 2023, with Defendant present. Dkt. 83. The Government called Dr. Low as its only witness.[6] The parties stipulated to Dr. Low's qualifications as an expert on criminal forensic psychology. Without objection, the Court admitted Dr. Low's curriculum vitae and psychological report. Dkts. 87–88.

Dr. Low testified to the facts in her report and provided some elaboration. Dr. Low testified that she believed Defendant's lack of cooperation with her was purely volitional and not the result of a mental disease or defect. She testified that Defendant may have refused to cooperate because he was upset with the month delay between his initial intake with Dr. Low and his assessment, he found Dr. Low rude and inconsiderate when she redirected him during the assessment, and he did

---

[5] The Court entered an agreed protective order for these documents, which were distributed to the parties for use in the competency hearing only. Dkt. 72.

[6] By agreement of the parties, the Court heard Dr. Low's testimony by video conference.

7

not like being in the special housing unit. However, Dr. Low did not make any formal conclusion as to what might have been causing Defendant's refusal to cooperate.

Dr. Low testified that she typically likes to meet with an inmate twice a week to make behavioral observations. However, if an inmate refuses to cooperate, Dr. Low will typically meet the inmate once a week for three weeks to try and complete the assessment before concluding the evaluation. Dr. Low testified that her brief observations of Defendant did not reveal anything significant and none of the correctional officers from FDC SeaTac contacted her to report any unusual behavior. However, Dr. Low acknowledged that FDC SeaTac staff does not always reach out to her when they observe something unusual with an inmate, staff observations are not documented in a daily log or otherwise, and she could not recall whether she reached out to FDC SeaTac staff to ask about their observations of Defendant. Dr. Low also did not reach out to anyone at the Winnebago County Jail to ask about their observations of Defendant.

Without objection, the Court admitted the Winnebago County Jail records from September 2022 to March 2023 (after Defendant returned from SeaTac). Dkt. 88-1. Although Dr. Low did not have these records when she made her competency determination, she testified that she had since reviewed them and that they did not change her opinion as to Defendant's diagnoses and competence to stand trial. Dr. Low did, however, admit that she would like to know more about Defendant talking to himself while at the Winnebago County Jail because she did not observe such behavior while he was at SeaTac, and Defendant's BOP records from 2009 to 2021 revealed no history of auditory hallucinations. Dr. Low also expressed skepticism that Defendant needed psychotropic medications, noting that Defendant was not on any psychotropic medications while in BOP custody before he was transferred to the Winnebago County Jail.

Defendant then called Ms. Johnson as his first witness. By agreement of the parties, Ms. Johnson offered lay testimony but not expert testimony. Dkt. 68. Ms. Johnson testified that she has a master's degree in clinical psychology and is a licensed clinical professional counselor. Ms. Johnston currently works as the mental health site supervisor at the Winnebago County Jail, where she has worked for 18 years. Ms. Johnson testified that she does not provide psychotherapy or counseling services and that her responsibilities include mental health assessments and screenings for psychiatric medication referrals, suicide risk, and housing unit changes. Ms. Johnson testified that Defendant has been in the Winnebago County Jail's mental health unit since he returned from FDC SeaTac in September 2022. She explained that his appearance and mannerisms are different now from when he left the Winnebago County Jail in June 2022, in that he refused to take his medications; his beard was longer and more unkempt; he was fidgety, pacing, and agitated when talking; he no longer smiled or greeted her by name; and he spoke about what was going on at the facility in a paranoid nature. Ms. Johnson further testified that she had observed Defendant at least five or six times and had witnessed Defendant talking to someone not present, and that she did not believe Defendant was malingering or faking his symptoms. She testified that Defendant appeared to be hearing voices in his head and responding to them.

Ms. Johnson testified that before Defendant left for SeaTac, he had been prescribed antipsychotic and antidepressant medications. This resulted from an incident in February 2022 where Defendant went several days without eating or wearing clothes, he was pacing and manic, he was talking to himself, and he threatened an officer. Defendant was forcibly medicated for three days due to a risk of harming himself or others.

Because the records from this timeframe were not before the Court and had not been provided to Dr. Low before she filed her report and testified, the Court granted Defendant's motion

to continue the competency hearing to subpoena incident reports and other documents "detailing the actions and/or mental state of Dave Roberson while in the Winnebago County Jail" between his arrival in September 2021 and his departure for FDC SeaTac in June 2022. Dkts. 80, 82.[7] These records revealed further incidents where Defendant was observed talking to himself, pacing, uncommunicative apart from nonverbal gestures, unkempt, refusing to shower, sometimes refusing to take advantage of his time out of his cell, and behaving oddly. Dkt. 88-2. Defendant began taking Zoloft and Zyprexa in February 2022 and participated in group therapy. *Id.* at 30–32. In March 2022, Defendant was transferred from the mental health unit to general housing, where he remained until he was transferred for his examination at FDC SeaTac on June 3, 2022. *Id.* at 46–47.

The Court granted the parties an opportunity to review these records and continued the competency hearing to April 21, 2023, with Defendant again present. Dkt. 86. The Court again heard testimony from Dr. Low. Without objection, the Court admitted the Winnebago County Jail records from September 2021 to June 2022. Dkt. 88-2.

Dr. Low testified that she had reviewed the records and that they did not change her previous diagnoses and opinion as to Defendant's competency to stand trial. Dr. Low opined that Defendant's acts appeared volitional, by which she meant intentional, and she specifically noted instances in December 2021 and January 2022 where Defendant acted out, such as by destroying a tablet, trying to tamper with a computer, and stripping naked and throwing his mattress and food trays when staff attempted to place a cellmate in his cell. Dkt. 88-2, at 40–42. Dr. Low continued to find that Defendant does not have a mental disease or defect that prevents him from

---

[7] The Court entered an additional agreed protective order for these documents, which were distributed to the parties for use in the competency hearing only. Dkt. 82.

understanding the nature and consequences of the proceedings or from assisting counsel properly in his defense. When asked about her methodology in reaching this conclusion, Dr. Low stated that she did not find it necessary to interview the psychologists who entered notes in Defendant's records, and she did not interview Defendant's family members or anyone at the Winnebago County Jail.

The Court then heard testimony from Defendant, who took the stand for approximately five minutes and was largely uncommunicative. When administered the oath, Defendant gave a thumbs up instead of speaking. Defendant stated his name, that he was 50 years old,[8] and that he assumed he was the defendant in this case. Defendant generally answered "no" or "I don't know" when asked basic questions about the case and other simple facts such as the year, current president, and where he sleeps at night. When asked whether he wanted a different attorney or wanted Mr. Phillips to continue as his attorney, Defendant stated that it did not matter.

Mr. Phillips then tendered an Offer of Proof to the Court detailing his efforts to represent Defendant, which the Court admitted as evidence without objection. Dkt. 89. Mr. Phillips represented that he spoke with Defendant four times in person and two times by telephone between November 30, 2021, and May 23, 2022, and that Defendant first reported on April 27, 2022, that he was hearing voices and had heard them for years in prison. *Id.* ¶¶ 3–6. Mr. Phillips represented that Defendant has refused to communicate with him since their last meeting on May 23, 2022, even though Mr. Phillips made several attempts to communicate in person, on video, and through letters delivered personally or by mail. *Id.* ¶¶ 8–10. Mr. Phillips represented that he made several telephone calls to officials at FDC SeaTac, to talk with Defendant to get him to cooperate with Dr.

---

[8] Defendant's records indicate that he was 41 years old. *See* Dkt. 88-1, at page 5 of 56.

11

Low and other FDC SeaTac staff, but Mr. Phillips never received a return telephone call or email from FDC SeaTac about scheduling a telephone conversation with Defendant. *Id.* ¶¶ 13–14.

The parties presented closing arguments, and the Court took the matter under advisement.

## II. Discussion

The Court's inquiry here is to determine whether Defendant "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d); *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). The two prongs of the competency test—understanding the proceedings and assisting in one's defense—are analytically distinct. *See United States v. Wessel*, 2 F.4th 1043, 1054 (7th Cir. 2021); *United States v. Salley*, 246 F. Supp. 2d 970, 977 (N.D. Ill. 2003) (noting different mental capacities are required for two prongs of competency test).

Here, Mr. Phillips has represented to the Court that Defendant cannot assist properly in his defense, stating that Defendant "could no[t] make the decision whether to accept or reject the proposed Plea Agreement because voices in his head were trying to tell him different actions to do" and thus Mr. Phillips and Defendant are "unable to rationally discuss . . . [Defendant's] response to the received plea agreement." Phillips Aff. ¶¶ 4, 6, Dkt. 31. Furthermore, Mr. Phillips represents that Defendant has refused to communicate with him since May 23, 2022, even though Mr. Phillips made several attempts to communicate in person, on video, and in written letters delivered personally or by mail. Phillips Offer of Proof ¶¶ 8–10, Dkt. 89. If Defendant cannot make a rational choice about whether to plead guilty, *Newman v. Harrington*, 726 F.3d 921, 935 (7th Cir. 2013) (citing *Salley*, 246 F. Supp. 2d at 979–80), or is unable to communicate with his attorney—as opposed to unwilling—*United States v. Merriweather*, 921 F. Supp. 2d 1265, 1304–

12

05 (N.D. Ala. 2013) (citing *Ferry v. State*, 453 N.E.2d 207, 212 (Ind. 1983)), then he cannot assist properly in his defense and thus cannot stand trial or plead guilty. *See also Godinez v. Moran*, 509 U.S. 389, 396, 399 (1993) (prescribing same competency standard for standing trial or pleading guilty).

The Seventh Circuit has explained that a district court is not required to order an examination or a competency hearing unless a reasonable doubt is raised as to a defendant's competency. *United States v. Woodard*, 744 F.3d 488, 493 (7th Cir. 2014). The Court's duty is ongoing; if reasonable doubt as to the defendant's competency arises as the case proceeds, then the Court must conduct a further inquiry, for instance by ordering an additional examination. *See United States v. Andrews*, 469 F.3d 1113, 1121 (7th Cir. 2006); *Drope v. Missouri*, 420 U.S. 162, 180–82 (1975).

This Court found reasonable cause to order an examination of Defendant and hold a competency hearing. *See* 18 U.S.C. § 4241(a), (b). Accordingly, it is the Government's burden to show by a preponderance of the evidence that Defendant is not "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d); *see United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992) (stating that the Government bears burden of proof). The Court must consider expert testimony and lay testimony, as well as the representations of defense counsel and the Court's own observations of the defendant. *United States v. Moore*, 425 F.3d 1061, 1067–68, 1074–75 (7th Cir. 2005).

If the evidence still leaves the Court with reasonable cause to believe that the defendant is presently suffering from a mental disease or defect rendering him incompetent, then the Court may exercise its discretion to order an additional examination. *See, e.g.*, *Wessel*, 2 F.4th at 1048-49;

*Salley*, 246 F. Supp. 2d at 973; *see also United States v. Wilbourn*, 336 F.3d 558, 559–60 (7th Cir. 2003) (noting district court's discretion to order second examination). As explained further below, the Court finds that a second competency examination is appropriate because there is evidence that "[i]s not adequately explained in the single competency report" from Dr. Low or through her testimony. *Andrews*, 469 F.3d at 1121 (quoting *United States v. Prince*, 938 F.2d 1092, 1095 (10th Cir. 1991)); *see also Drope*, 420 U.S. at 177 n.13 ("[R]esolution of the issue of competence to stand trial at an early date best serves both the interests of fairness and of sound judicial administration.") (citation omitted).

Mr. Phillips has presented evidence suggesting that Defendant cannot assist properly in his defense. With respect to the basis of Mr. Phillips' concerns—Defendant's allegations of hearing voices—Dr. Low reported that they were atypical, vague, contradictory, and not supported by genuine signs or symptoms, and thus extremely dubious, although Dr. Low stopped short of stating that they were fabricated. Dr. Low placed a great deal of significance on Defendant's denial of hearing voices at his health intake screen and on the fact that Defendant's allegations were uncorroborated by observations of Defendant or by BOP records dating back to 2009. However, her report and testimony do not adequately explain the evidence before the Court, and as such, further inquiry is necessary.

Medical records from Winnebago County Jail documented Defendant talking to and responding to himself 3 times before he left for SeaTac and 13 times after he returned. Accordingly, Dr. Low's reliance on the lack of similar documentation in older BOP records is inadequate to support her conclusions regarding Defendant's *present* ability to assist in his defense. Additionally, Dr. Low testified that after reviewing the Winnebago County Jail records, they did not change her opinion on Defendant's competency. She found Defendant's lack of cooperation

14

with her purely volitional and not the result of a mental disease or defect. However, after Dr. Low described Defendant's changed presentation after their first meeting as sleepy and slow moving, irritable, along with Defendant's refusal to take his psychotropic medication and reports of staff trying to kill him, she only briefly spoke with him on two more occasions. *See United States v. Taylor*, 437 F.2d 371, 378 (4th Cir. 1971) (stating that in some cases a defendant's failure to cooperate in a mental health examination "may itself be a symptom of mental disorder").

Without Defendant's cooperation in psychiatric testing, Dr. Low based her conclusions on one 45-minute forensic intake and 3 brief interactions with Defendant. Such limited observations alone are inadequate to support a conclusion with respect to Defendant's competency. *See, e.g.*, *Wessel*, 2 F.4th at 1050 (district court discounted opinion based on just 4.5 hours of observation); *United States v. Segal*, 398 F. Supp. 2d 912, 915 (N.D. Ill. 2005) (assigning less weight to opinion of expert who "spent less than six hours evaluating the defendant without engaging in similar extensive testing as the government"). Although courts have relied on the opinions of experts who did not conduct formal testing of a defendant, those courts have stressed the supplemental evidence supporting the examiner's conclusions, including the observations of staff.[9]

---

[9] *E.g.*, *United States v. Cobble*, No. 20-13166, 2022 WL 3448354, at *3 (11th Cir. Aug. 17, 2022) (noting "daily interactions over six months" between examiner and uncooperative examinee); *United States v. Rivera*, No. 90 CR 1001-1, 1995 WL 20452, at *3–4 (N.D. Ill. Jan. 12, 1995) (examiner interviewed staff "who had daily contact with" examinee); *United States v. Nava-Aguiniga*, No. 11-CR-111 TS, 2012 WL 4748915, at *2 (D. Utah Oct. 4, 2012) (examiner noted discussions with examinee as well as observations of staff); *United States v. Jackson*, No. 15-CR-284, 2021 WL 2905567, at *3–4 (N.D. Ga. May 25, 2021), *report and recommendation adopted*, 2021 WL 2895689 (N.D. Ga. July 9, 2021) (examiner relied on "her and other staff members' observations of [the examinee's] behavior during his confinement at FDC-Miami (including occasionally violent and disruptive episodes) [and] monitored telephone calls and email communications"); *see also United States v. Elliott*, No. 19-CR-152, 2022 WL 1444183, at *3–4 (S.D. Ind. May 6, 2022) (noting that examiner "had to walk past [the examinee's] cell whenever she entered or exited the unit where her office is located and she was able to observe and interact with [the examinee] often during his evaluation period").

In this case, Dr. Low relied on only a few brief observations of Defendant during his three months at FDC SeaTac, which she testified did not reveal anything significant. She also relied on the lack of any unusual behavior being reported by FDC SeaTac staff. However, she did not recall if she reached out to FDC SeaTac staff to ask about their observations of Defendant. Furthermore, despite the Winnebago County Jail records showing numerous reports of troubling and disruptive conduct, including the need for involuntary medication, Dr. Low did not reach out to anyone at the jail before forming her conclusions.

Dr. Low also relied on the fact that Defendant "denied a history of auditory hallucinations or suicide attempts" at a health screen when he arrived at FDC SeaTac on June 15, 2022. Low Rep. at 8, Dkt. 88. Despite explicitly recognizing that Defendant's denial of suicide attempts was false, as shown by BOP records, and frequently stating that Defendant is a "poor historian," Dr. Low was willing to accept Defendant's denial of a history of auditory hallucinations at face value and to simultaneously discredit Defendant's reports of hearing voices when he met with Dr. Low on June 28, 2022, and an FDC SeaTac physician on July 25, 2022. Low Rep. at 2, 9, Dkt. 88. Without additional explanation, the Court cannot discern why Dr. Low chose to rely on certain statements from Defendant, while discrediting others, to support her competency determination. Similarly, Dr. Low did not explain why Defendant's claim that some of the voices sounded like himself undermines the overall claim that the voices prevent him from making decisions.

While the Court is sympathetic to Dr. Low's limitations in light of Defendant's refusal to cooperate, on this record and without further explanation and support for Dr. Low's ultimate conclusions, the Court if left without sufficient evidence to make a finding as to Defendant's competency.

### III. Order for Competency Examination and Report

For the reasons set forth above, the Court finds pursuant to 18 U.S.C. § 4241(a) that there is reasonable cause to believe that Defendant Dave Roberson may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Accordingly, the Court continues the competency hearing pending the completion of an additional psychiatric or psychological examination and report.

Prior to the continued competency hearing, the Court orders that a psychiatric or psychological examination of Defendant be conducted and that a psychiatric or psychological report be filed with the Court pursuant to 18 U.S.C. § 4247(b)–(c). The Court finds it appropriate for an examiner other than Dr. Low to conduct the examination and prepare and file the report. *See* 18 U.S.C. § 4247(b). Additionally, the parties shall provide the new examiner with all records previously provided to Dr. Low along with all the Winnebago County Jail records previously produced.

In addition to addressing whether Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the report shall specifically address whether Defendant's allegations of hearing voices and refusal to communicate with his attorney render him unable to assist properly in his own defense. If Defendant refuses to communicate with the examiner or to comply with the examination, the examiner shall specifically opine on whether such refusal is associated with a mental disease or defect and outline the steps taken to ensure the examiner's findings are based on sufficient

17

information and observations of Defendant, including by those individuals who interact with Defendant on a daily basis.

For purposes of this examination, the Court commits Defendant to the custody of the Attorney General for placement in the suitable facility that is closest to the Court. *See* 18 U.S.C. § 4247(b). The period of commitment is for a reasonable period necessary to evaluate Defendant pursuant to this Order but shall not exceed 30 days from the date Defendant arrives at the facility. *See* 18 U.S.C. § 4247(b).[10]

Accordingly, the United States Marshal Service shall cause a psychiatric or psychological examination of Defendant Dave Roberson to be conducted by a licensed or certified psychiatrist or psychologist within 30 days from the date Defendant arrives at the facility. *See* 18 U.S.C. § 4247(b). The examiner shall file a copy of the psychiatric or psychological report that complies with 18 U.S.C. § 4247(c) with the Court and provide copies to Defendant's counsel and to counsel for the Government.

---

[10] The director of the facility may apply for a reasonable extension, not to exceed fifteen days, upon a showing of good cause that the additional time is necessary to observe and evaluate Defendant. *See* 18 U.S.C. § 4247(b). Any request for an extension shall be made to the Court before the 30-day period of commitment has expired.

The Court will discuss the scheduling of the continued competency hearing with the parties once the psychiatric or psychological report is received and reviewed. The telephonic status hearing previously set for May 22, 2023 is stricken. By June 7, 2023, or within 7 days of Defendant arriving at a facility for his examination, the parties shall file a joint status report informing the Court of Defendant's arrival. The Court excludes time under the Speedy Trial Act from May 8, 2023 through June 7, 2023 under 18 U.S.C. § 3161(h)(1)(A) to allow time for an examination of Defendant's mental competency.

Date: May 8, 2023     By: _/s/ Lisa A. Jensen_
Lisa A. Jensen
United States Magistrate Judge